| | |
|---|---|
| 1 | Michelle R. Ghidotti-Gonsalves, Esq., (SBN 232837) |
| 2 | Jennifer R. Bergh, Esq., (SBN 305219)<br>LAW OFFICES OF MICHELLE GHIDOTTI |
| 3 | 5120 E. La Palma Ave. Ste. 206 |
| 4 | Anaheim Hills, CA 92807<br>Ph: (949) 354-2601 |
| 5 | Fax: (949) 200-4381<br>mghidotti@ghidottilaw.com |
| 6 | |
| 7 | Attorneys for Movant,<br>Wilmington Savings Fund Society, FSB, d/b/a |
| 8 | Christiana Trust, as trustee for Normandy<br>Mortgage Loan Trust, Series 2015-1, its |
| 9 | Successors and assigns |

<div align="center">

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

</div>

| | |
|---|---|
| In Re:<br><br>Peter A. McCoy,<br><br>     Debtor. | ) CASE NO.: 16-51687<br>)<br>) CHAPTER 13<br>)<br>) REF.: MRG-1<br>)<br>) **DECLARATION OF IRISA**<br>) **STAGGERS IN SUPPORT OF**<br>) **WILMINGTON SAVINGS FUND**<br>) **SOCIETY, FSB, D/B/A**<br>) **CHRISTIANA TRUST, AS**<br>) **TRUSTEE FOR NORMANDY**<br>) **MORTGAGE LOAN TRUST,**<br>) **SERIES 2015-1MOTION FOR**<br>) **RELIEF FROM STAY**<br>)<br>) **DATE:** December 2, 2016<br>) **TIME:** 10:00 a.m.<br>) **CTRM:** 3020<br>) **PLACE:** U.S. Bankruptcy Court<br>)          280 S. 1st Street<br>)          San Jose, CA 95113<br>)<br>)    Honorable M. Elaine Hammond |

I, Irisa Staggers, declare:

<div align="center">

1

DECLARATION OF IRISA STAGGERS IN SUPPORT OF WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A
CHRISTIANA TRUST, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1 MOTION FOR
RELIEF FROM STAY

</div>

1. I am employed by Selene Finance LP, servicing agent for Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as trustee for Normandy Mortgage Loan Trust, Series 2015-1, ("**Movant**") as Banruptcy Manager.

2. I make this declaration based upon the facts testified herein, all of which are in my personal knowledge, unless stated upon information and belief. As to the statements made upon information and belief, I believe them to be true. If called as a witness, I could and would competently testify thereto.

3. I am personally familiar with the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor Peter A. McCoy (hereinafter referred to as "**Debtor**") concerning the property commonly known as 260 Baltusrol Dr., Aptos, CA 95003 (the "**Property**"). I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

4. Debtor executed and delivered to CitiMortgage Inc., that certain InterestFirst Adjustable Rate Note dated November 30, 2006, in the original principal amount of $895,280.00 (the "**Note**"). A true and correct copy of the Note is attached as Exhibit "1" and incorporated herein by reference.

5. Movant is the current owner of the Note and is in possession of the original Note.

6. Concurrently therewith, and as security for the Note, Debtor executed and delivered to CitiMortgage, Inc., a Deed of Trust, recorded in the Official Records of Santa Cruz County,

DECLARATION OF IRISA STAGGERS IN SUPPORT OF WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1 MOTION FOR RELIEF FROM STAY

California as Document No. 2007-0047126 on August 31, 2007 (the "**Deed of Trust**"), and which encumbers the Property. A true and correct copy of the Deed of Trust is attached as Exhibit "2" and is incorporated herein by reference.

7. Thereafter all beneficial interest in the Deed of Trust was assigned by Assignment of Deed of Trust from CitiMortgage Inc., to Verdugo Trustee Service Corporation, recorded in the Official Records of Santa Cruz County, California, on June 5, 2008 as Document No. 2008-0024346 (the "**First Assignment**"). A true and correct copy of the First Assignment is attached as Exhibit "3" and is incorporated herein by reference.

8. Thereafter all beneficial interest in the Deed of Trust was assigned by Assignment of Deed of Trust from Verdugo Trustee Service Corporation to U.S. Bank National Association, as Trustee for Stanwich Mortgage Loan Trust, Series 2012-7, recorded in the Official Records of Santa Cruz County, California, as Document No.: 2012-0043649 on September 11, 2012 (the "**Second Assignment**"). A true and correct copy of the Second Assignment is attached as Exhibit "4" and is incorporated herein by reference.

9. Thereafter all beneficial interest in the Deed of Trust was assigned by Assignment of Deed of Trust from U.S. Bank National Association, as Trustee for Stanwich Mortgage Loan Turst, Series 2012-7, to Wilmington Savings Fund Society, FSB, D/B/A Christiana Trust, Not in its Individual Capacity, as Trustee for Normandy Mortgage Loan Trust, Series 2015-1, recorded in the Official Records of Santa Cruz County, California, as Document No.: 2016-0010484 on March 28, 2016 (the "**Third Assignment**"). A true and correct copy of the Third Assignment is attached as Exhibit "5" and is incorporated herein by reference.

10. Pursuant to the Deed of Trust, Movant is entitled to recover attorneys' fees and costs in connection with the matter herein.

11. Pursuant to the Deed of Trust, Movant is entitled to take the necessary steps to protect its security interest in the Property, including advancing taxes, insurance, foreclosure fees and costs and attorney's fees and costs and to assess the costs plus interest, to the balance due under the loan.

DECLARATION OF IRISA STAGGERS IN SUPPORT OF WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1 MOTION FOR RELIEF FROM STAY

12. On August 28, 2015 Movant caused to be recorded a Notice of Default recorded in the Official Records of Santa Cruz County as Document No.: 2015-0035296 ("**Notice of Default**"). A true and correct copy of the Notice of Default is attached as Exhibit "6" and is incorporated herein.

13. On May 2, 2016 Movant caused to be recorded a Notice of Sale recorded in the Offical Records of Santa Cruz County as Document No.: 2016-0015198, with an original sale date of June 8, 2016 ("**Notice of Sale**"). A true and correct copy of the Notice of Sale is attached as Exhibit "7" and is incorporated herein.

14. On June 7, 2016, one day before Movant's scheduled sale, Debtor filed a Petition under Chapter 13 of the United States Bankruptcy Code, in the Northern District of California, Petition No.: 16-51687.

15. In connection with the Petition Debtor filed a Chapter 13 Plan which relies on the approval of a Loan Modification of Movant's Loan.

16. Debtor is not in the process of a Loan Modification.

17. On July 25, 2016 Movant filed an Objection to the Debtor's Chapter 13 Plan. Debtor has not resolved Movant's objection or filed an amended Chapter 13 Plan.

18. Movant has not received a post-petition payment from Debtor.

19. Debtor is post-petition due for the July 1, 2016 payment and all subsequent payments for a total post-petition default of no less than $12,731.88, including attorneys fees and costs in the amount of $1,026.00.

20. Pursuant to Local Bankruptcy Rule 4001-1 (g)(1), a true and correct copy of an Account Statement outlining unpaid post-petition obligations is attached hereto as Exhibit "8" and is incorporated herein by reference.

21. The current unpaid principal balance is no less than approximately $1,065,939.92.

22. The total owed to Movant is no less than approximately $1,137,165.41.

23. As of the date of filing this declaration Movant has not received a Loan Modification application from Debtor and there is no pending Loan Modifiction for Debtor.

4

DECLARATION OF IRISA STAGGERS IN SUPPORT OF WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1 MOTION FOR RELIEF FROM STAY

1    24. Movant seeks relief from stay herein to proceed with its non-bankruptcy remedies

2    including, but not limited to, continuing its efforts to foreclose upon the Property, obtaining

3    possession of and selling the Property.

4        I declare under penalty of perjury under the laws of the United States of America that

5    the foregoing is true and correct and executed this ___2___ day of __NOV.__, 2016 at

6    Jacksonville , FL

7

8                         Irisa Staggers

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF IRISA STAGGERS IN SUPPORT OF WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A
CHRISTIANA TRUST, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1 MOTION FOR
RELIEF FROM STAY

# EXHIBIT "1"



# InterestFirst™ ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps - 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

November 30, 2006          San Jose          California
[Date]                           [City]                       [State]

260 Baltusrol Drive, Aptos, CA 95003
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 895,280.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500          %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on February 1, 2007.          . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on January 1, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO 63368-2240

or at a different place if required by the Note Holder.

REDACTED

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR LIBOR INDEX - 10 Yr. Interest Only Period - Single Family - Fannie Mae Uniform Instrument

VMP-198N (0506).01          Form 3537 6/05
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5          Initials:

CitiMortgage 3.2.5.07 V2



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $4,849.43 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **January, 2008**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two & 25/100 percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.500 % or less than 4.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

REDACTED

Form 3537 6/05

Initials:

CitiMortgage 3.2.5.07 V2

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of           15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          6.000        % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

Case: 16-51687      Doc# 24-2      Filed: 11/18/16      Entered: 11/18/16 13:09:47      Page 9 of 54

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

REDACTED

VMP-198N (0506).01

Page 4 of 5

Form 3537 9/05
Initials: _____
CitiMortgage 3.2.5.07 V2

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 10 of 54

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Peter McCoy                      -Borrower

*(Sign Original Only)*

REDACTED

VMP®-198N (0506).01                    Page 5 of 5                    Form 3537 6/05
                                                                      CitiMortgage 3.2.5.07 V2

# EXHIBIT "2"

||||||||||||||||||||||||||||||||||||||||

2007-0047126

| | Recorded | | REC FEE | 75.00 |
| | Official Records | | | |
| | County of | | | |
| | Santa Cruz | | | |
| | GARY E. HAZELTON | | | |
| | Recorder | | | |
| | | | LRH | |
| | 08:03AM 31-Aug-2007 | | Page 1 of 23 | |

**RECORDING REQUESTED BY**
First American Title Company

**AND WHEN RECORDED MAIL TO:**
**CITIMORTGAGE, INC**
**ATTN: DOCUMENT PROCESSING**
**P.O. BOX 790021**
**ST. LOUIS, MO 63179-0021**

_____ Space Above This Line for Recorder's Use Only _____

A.P.N.: 053-211-20

File No.: 4318-2535748/3093115 (LC)

DEED OF TRUST

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

Prepared By:
CitiMortgage, Inc.
1800 East Imperial Highway
Suite 130
Brea , CA  92821

————————————— [Space Above This Line For Recording Data] —————————————

# DEED OF TRUST

MIN REDACTED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 30, 2006
together with all Riders to this document.
(B) "Borrower" is Peter McCoy, A Married Man As His Sole And Separate Property

Borrower's address is 260 Baltusrol Drive, Aptos, CA  95003
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is  CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York

REDACTED
CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005  1/01

VMP ®-6A(CA) (0207).01
Page 1 of 15           Initials:
       VMP Mortgage Forms, Inc.

CitiMortgage 3.2.5.07 V2

Lender's address is 1000 Technology Drive, O' Fallon, MO 63368-2240

(D) "Trustee" is Verdugo Trustee Service Corporation

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated November 30, 2006
The Note states that Borrower owes Lender Eight Hundred Ninety Five Thousand Two Hundred Eighty
Dollars
(U.S. $ 895,280.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 01/01/2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Other(s):  ASSUMPTION RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

REDACTED

Initials: _____

Page 2 of 15

Form 3005   1/01
CitiMortgage 3.2.5.07 V2

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Santa Cruz :

[Type of Recording Jurisdiction]      [Name of Recording Jurisdiction]

**See Schedule A Attached Hereto And Made Apart Hereof**

Parcel ID Number:                                                which currently has the address of
**260 Baltusrol Drive**                                                                    [Street]
**Aptos**                                            [City] , **California 95003**-      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

REDACTED

Initials:

Form 3005   1/01
CitiMortgage 3.2.5.07 V2

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

REDACTED

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 17
of 54

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

REDACTED

-6A(CA) (0207).01

Page 5 of 15

Initials: _PLY_

Form 3005   1/01
CitiMortgage 3.2.5.07 V2

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

REDACTED

VMP®-6A(CA) (0207).01                    Page 6 of 15          Initials: _____

Form 3005   1/01
CitiMortgage 3.2.5.07 V2

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

REDACTED

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 20 of 54

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

REDACTED

VMP-6A(CA) (0207).01 

Page 8 of 15

Initials: ___

Form 3005   1/01
CitiMortgage 3.2.5.07 V2

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

REDACTED

Case: 16-51687   Doc# 24-2   Filed: 11/18/16   Entered: 11/18/16 13:09:47   Page 22 of 54

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

REDACTED

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

REDACTED

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 24 of 54

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 25 of 54

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

REDACTED

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 26 of 54

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                    Peter McCoy              -Borrower
                                    (Sign Original Only)

_____

REDACTED

-6A(CA) (0207).01                Page 14 of 15                Form 3005   1/01
                                                             CitiMortgage 3.2.5.07 V2

State of California
County of *SAN MATEO* } ss.

On *1st DECEMBER, 2006* before me, *Anthony Warren, NOTARY PUBLIC*
personally appeared

*Peter McCoy*

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

ANTHONY WARREN
Commission # 1701072
Notary Public - California
San Francisco County
My Comm. Expires Nov 23, 2010

_____ (Seal)
*Anthony Warren*

REDACTED

VMP-6A(CA) (0207).01                    Page 15 of 15      Initials: _____      Form 3005   1/01
                                                                              CitiMortgage 3.2.5.07 V2

ANTHONY WARREN
Commission # 1701072
Notary Public - California
San Francisco County
My Comm. Expires Nov 23, 2010

# ADJUSTABLE RATE RIDER

**(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps**
**- Ten -Year Interest Only Period)**

THIS ADJUSTABLE RATE RIDER is made this **Thirtieth** day of **November, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CitiMortgage, Inc.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

> 260 Baltusrol Drive
> Aptos, CA 95003

> [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **6.500** %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **January, 2008**, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Ten-Year Interest Only Period - Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP®-198R (0603) Form 3155 2/06
Page 1 of 4          Initials:
VMP Mortgage Solutions, Inc.

CitiMortgage 3.2.5.07 V2

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in <u>The Wall Street Journal</u>. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two & 25/100** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.500** % or less than **4.500** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

REDACTED

VMP®-198R (0603)                    Page 2 of 4              Initials: _____

Form 3155 2/06
CitiMortgage 3.2.5.07 V2

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

REDACTED

Page 3 of 4

Initials: _[handwritten]_

Form 3155 2/06
CitiMortgage 3.2.5.07 V2

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
/Peter McCoy                                    -Borrower

REDACTED

Page 4 of 4

Form 3155 2/06
CitiMortgage 3.2.5.07 V2

Loan #: REDACTED

# ADJUSTABLE RATE ASSUMPTION RIDER

THIS ASSUMPTION RIDER is made this __30th__ day of __November__, __2006__, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned person whether one or more, (the "Borrower") to secure Borrower's Note to __CitiMortgage, Inc., 1000 Technology Drive, O' Fallon, MO 63368-2240__
(the "Lender") of the same date and covering the property described in the Security Instrument and located at: __260 Baltusrol Drive, Aptos, CA 95003__

<div align="center">(PROPERTY ADDRESS)</div>

**ASSUMPTION COVENANTS. In addition to the convenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:**

A.  **ASSUMPTION.** Any person purchasing the Property from Borrower may assume full liability to repay Borrower's Note to Lender under the terms and conditions set out in this Assumption Rider.

B.  **AGREEMENT.** Lender may require the Purchaser to sign an assumption agreement, in the form required by Lender, which obligates the Purchaser to keep all the promises and agreements made in the Note and Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

C.  **APPLICABILITY.** Lender is bound by these conditions and terms, as follows:
    1.  This Assumption Rider applies only to the first transfer of the Property by Borrower and not to a foreclosure sale;
    2.  Purchaser must be an individual, not a partnership, corporation or other entity;
    3.  Purchaser must meet Lender's credit underwriting standards for the type of loan being assumed as if Lender were making a new loan to Purchaser;
    4.  Purchaser shall assume only the balance due on the Note at the time of assumption for the term remaining on the Note;
    5.  If applicable, Borrower's private mortgage insurance coverage must be transferred to the Purchaser in writing, unless waived by Lender;
    6.  If Borrower's Note has a conversion feature and Borrower has exercised the right of conversion of this loan to a fixed rate loan from Lender, this Assumption Rider is void and Lender has no obligation to allow assumption by a Purchaser from Borrower; and
    7.  Lender must reasonably determine that Lender's security will not be impaired by the loan assumption.

Case: 16-51687    Doc# 24-2    Filed: 11/18/16    Entered: 11/18/16 13:09:47    Page 34 of 54

Loan #: REDACTED

D.  **ASSUMPTION RATE.**   Lender will allow assumption by Purchaser at Borrower's Note interest rate in effect at the time of assumption.

E.  **ADDITIONAL CHARGES.**   In addition, Lender may charge an amount up to one percent (1%) of the current Note balance and its normal loan closing costs, except the cost of a real estate appraisal.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants of this Assumption Rider.

_____ (Seal)
Peter McCoy                                      -Borrower

MB-1908  Rev.  3/99    Page 2 of 2

CitiMortgage 3.2.5.07 V2

Order No.: 3093115c
Reference No.: MCCOY
Escrow Officer:
Escrow Number: 2535748

## DESCRIPTION

All that certain land situated in the unincorporated area of the **County of SANTA CRUZ, State of California,** and described as follows:

**LOT 74, AS SHOWN UPON THAT MAP ENTITLED, "TRACT NUMBER 249, COUNTRY CLUB PARK UNIT NUMBER 4", FILED FOR RECORD ON APRIL 20, 1960, IN MAP BOOK 36, PAGE 10, SANTA CRUZ COUNTY RECORDS.**

APN No: **053-211-20**

# EXHIBIT "3"

ASN.



Requested and Prepared by:
FIRST AMERICAN TITLE/LENDERS ADV

When Recorded Mail To:
Five Star Service Corporation
1000 Technology Drive
MS-314
O'Fallon, MO 63368-2240

REDACTED

| Recorded | REC FEE | 13.00 |
| Official Records | |
| County of | |
| Santa Cruz | |
| GARY E. HAZELTON | |
| Recorder | |
| | JRS |
| 01:00PM 05-Jun-2008 | Page 1 of 2 |

Loan No. REDACTED
TS No: 0!

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

### CitiMortgage, Inc.

all beneficial interest under that certain Deed of Trust dated: **11/30/2006** executed by **PETER MCCOY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, as Trustor(s), to **VERDUGO TRUSTEE SERVICE CORPORATION**, as Trustee, and recorded as Instrument No. **2007-0047126**, on **8/31/2007**, in Book , Page of Official Records, in the office of the County Recorder of **Santa Cruz** County, **California,** describing land therein as: More fully described on said Deed of Trust

 together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Loan No.:               Investor No.

TS No: 08-7886      APN.:

Date: 6-3-08

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

AARON MENNE, ASSISTANT VICE PRESIDENT

STATE OF MISSOURI
COUNTY OF SAINT CHARLES

On 6-3-08       before me, James D. Agee, Jr. Personally appeared, AARON MENNE, ASSISTANT VICE PRESIDENT who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Missouri that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature of Officer                       (Seal)

JAMES D. AGEE, JR.
Notary Public-Notary Seal
State of Missouri
St Charles County
My Commission Expires Jul 18, 2008

# EXHIBIT "4"

Recording Requested by:
M. E. Wileman

PLEASE FORWARD RECORDED
DOCUMENT TO:
M. E. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092

2012-0043649 09/11/2012 10:59:37 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $18.00
COUNTY TAX: $0.00
CITY TAX: $0.00



ADTR
1 PG
RCD155



## Assignment of Deed of Trust

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **CITIMORTGAGE, INC. 4050 REGENT BLVD, MAIL STOP N2A-222, IRVING, TX 75063 (Assignor)** by these presents does assign and set over, without recourse, to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7  1610 E. St. Andrews Pl., Suite B150, Santa Ana, CA 92705 (Assignee)** the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **PETER MCCOY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') AS NOMINEE FOR CITIMORTGAGE, INC. ITS SUCCESSORS AND ASSIGNS. Said deed of trust **Dated: 11/30/2006** is recorded in the **State of CA, County of Santa Cruz** on 8/31/2007, **Instrument 2007-0047126 AMOUNT: $ 895,280.00**    Property Address: 260 BALTUSROL DRIVE, APTOS, CA 95003

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by its proper officer.  Executed on:  August 20, 2012
CITIMORTGAGE, INC.

By: _____      REDACTED

   M. Mathews, Vice President

State of Texas, County of Tarrant
    Before me, Kimberly Jean Starkey, Notary Public, personally appeared, M. Mathews, Vice President known to me to be the person(s) whose name(s) is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.
Given under my hand and seal of office on 08/20/2012.

KIMBERLY JEAN STARKEY
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
10-13-2015

   Notary public, Kimberly Jean Starkey
   My commission expires: October 13, 2015

MIN REDACTED          MERS Phone 888-679-6377

        CA   Santa Cruz                          CITICAP/WL22-2012/AS

# EXHIBIT "5"

Prepared by, Recording Requested By
and Return to:
Charles Brown
Brown & Associates
2316 Southmore
Pasadena, TX 77502
713-941-4928



2016-0010484  03/28/2016  02:20:03 PM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $21.00
COUNTY TAX: $0.00
CITY TAX: $0.00
ADTR
2 PGS
RCD160

# ASSIGNMENT OF DEED OF TRUST

REDACTED

*FOR VALUE RECEIVED*, **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7, ITS SUCCESSORS AND ASSIGNS**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVENUE, STE 400 SOUTH, HOUSTON, TX 77042, does hereby assign and transfer to **WILMINGTON SAVINGS FUND SOCIETY, FSB, D\B\A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, AS TRUSTEE FOR NORMANDY MORTGAGE LOAN TRUST, SERIES 2015-1** whose address is C\O SELENE FINANCE, LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TEXAS 77042, all its right, title and interest in and to the following described deed of trust executed by **PETER MCCOY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS** for **$895,280.00** dated **11/30/2006** of record on **8/31/2007** at Document Number **2007-0047126**, in the **SANTA CRUZ** County Clerk's Office, State of **CALIFORNIA**.

Property Address: 260  BALTUSROL DR, APTOS, CALIFORNIA 95003

Executed this   2-24-2016

**U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7 BY: SELENE FINANCE LP,  ITS ATTORNEY-IN-FACT**

By:     DONNA BRAMMER
Title:    VICE PRESIDENT

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

This instrument was acknowledged before me on __2·24-16__ by DONNA BRAMMER the VICE PRESIDENT of SELENE FINANCE LP, AS ATTORNEY-IN-FACT FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7, ITS SUCCESSORS AND ASSIGNS, on behalf of said corporation.

Notary Public in and for the State of Texas
Notary's Printed Name: Robert Ortega
My Commission Expires: 9/11/2019
Notary ID 130363364

ROBERT ORTEGA
Notary Public. State of Texas
Comm. Expires 09-11 2019
Notary ID 130363364

DOT for $895,280.00 dated 11/30/2006

REDACTED

# EXHIBIT "6"

2015-0035296      8/28/2015 11:33 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $27.00
COUNTY TAX: $0.00
CITY TAX: $0.00

2001 ER SERVICELINK - IRVIN     NDEF

**Electronically Recorded**      4   PGS

RCD135

RECORDING REQUESTED BY:

ServiceLink

WHEN RECORDED MAIL TO:
**Attorney Lender Services, Inc.**
**5120 E. La Palma Avenue, Suite 209**
**Anaheim, California 92807**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.: 14-0936     Loan No.: *******900
APN No.: 053-211-20

# IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR]

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$ 59,357.63** as of 8/27/2015, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or lender may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee/lender will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee/lender may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:
**SELENE FINANCE, LP**
**9990 Richmond Ave. 400S**
**Houston, TX 77042**
**Telephone: 904-473-0439**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. NOTICE IS HERBY GIVEN: ATTORNEY LENDER SERVICES, INC.** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **11/30/2006**, executed by **PETER MCCOY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** , as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIMORTGAGE, INC.** , as beneficiary, recorded **8/31/2007**, as Instrument No. **2007-0047126**, of Official Records in the Office of the Recorder of **Santa Cruz** County, As more fully described on said Deed of Trust.

Said obligations include 1 **NOTE FOR THE ORIGINAL** sum of **$895,280.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7,that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

 **That installment of interest, and escrow which became due on 3/1/2014 plus late charges, and all subsequent installments of interest, and escrow, late charges, fees and costs, and foreclosure fees and costs.**

Nothing in this Notice of Default should be construed as a waiver of any fees or other amounts owing to the Beneficiary pursuant to the terms of the loan documents.

That by reason thereof, the present Beneficiary under such Deed of Trust, has appointed ATTORNEY LENDER SERVICES, INC. as Trustee, and executed and delivered to said duly authorized and appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause said secured property to be sold to satisfy the obligations secured thereby.

The mortgagee, Beneficiary, or authorized agent for the beneficiary, pursuant to California Civil Code Section 2923.55 declares that the mortgagee, beneficiary or mortgagee's beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code Section 2923.55 (See attached)

Dated: 8/27/2015

ATTORNEY LENDER SERVICES, INC.

BY: _DIANE WEIFENBACH, PRESIDENT_____

ATTORNEY LENDER SERVICES INC. MAY BE CONSIDERED A DEBT COLLECTOR AND ANY INFORMATION WILL BE USED FOR THAT PURPOSE.

**BENEFICIARY DECLARATION OF COMPLIANCE WITH (OR EXCEPTION FROM) CIVIL CODE**

**SECTION 2923.55 AND AUTHORIZATION OF AGENT (FOR NOTICE OF DEFAULT)**

**ATTORNEY LENDER SERVICES, INC.**
**5120 E. LaPalma Avenue, #206**
**Anaheim, CA 92807**

- **Borrower:** PETER MCCOY
- **Beneficiary:** U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7
- **Property:** 260 BALTUSTROL DRIVE, APTOS, CA 95003
- **Loan No:** XXXXXXX125
- **TS No:** 14-0936

**The undersigned beneficiary, or authorized agent for the beneficiary, hereby represents and declares:**

**[ ] The beneficiary or beneficiary's authorized agent has contacted the borrower pursuant to, and has complied with, Civil Code Section 2923.55(a)(2) (contact provision to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure"). State the date "contact" with the borrower(s) was accomplished pursuant to Civil Code Section 2923.55(a)(2):** ____July 30th____, 20__14__.

**[ ] The beneficiary or beneficiary's authorized agent has exercised due diligence to contact the borrower as required by California Civil Code Section 2923.55(g) and, after waiting two (2) weeks after the telephone call requirements of Civil Code 2923.55(g)(2) were satisfied, the beneficiary or the beneficiary's authorized agent sent to the borrower(s), by certified mail, return receipt requested, the letter required by Civil Code Section 2923.55(g)(3), which was mailed on _____, 20_____. (Date of mailing)**

**[ ] Pursuant to Civil Code Section 2923.55(h)(1), the borrower has surrendered the secured property as evidenced by either a letter confirming the surrender or by delivery of the keys to the secured property to the beneficiary, the beneficiary's authorized agent or to the trustee. The surrender letter was received on _____(date); the keys were received on _____. (date).**

**[ ] Pursuant to Civil Code Section 2923.5S(h)(2), the beneficiary or beneficiary's authorized agent has evidence in its file, and reasonably believes, that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.**

[  ] Pursuant to Civil Code Section 2923.55(h)(3), the beneficiary or beneficiary's authorized agent has verified information that on or before the date of this declaration, the borrower(s) has filed for bankruptcy and the proceedings have not been finalized.

[  ] The provisions of Civil Code 2923.55 do not apply, because [  ] the property is NOT THE BORROWER'S PRINCIPAL RESIDENCE; or [  ] the property is COMMERCIAL PROPERTY.

The undersigned authorized the trustee, foreclosure agent and/or their authorized agent to sign, on behalf of the beneficiary/authorized agent, the notice of default containing the declaration required pursuant to Civil Code Section 2923.55(b).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: _____11/25/2014_____

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR STANWICH MORTGAGE LOAN TRUST, SERIES 2012-7 BY SELENE FINANCE LP, ITS ATTORNEY IN FACT

# EXHIBIT "7"

2016-0015198    5/2/2016 11:45 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $21.00
COUNTY TAX: $0.00
CITY TAX: $0.00
2001 ER SERVICELINK - IRVIN    NTSA
Electronically Recorded    2 PGS
RCD157

RECORDING REQUESTED BY
**Attorney Lender Services, Inc.**

AND WHEN RECORDED MAIL TO:
**Attorney Lender Services, Inc.**
**5120 E. LaPalma Avenue, Suite 209**
**Anaheim, California 92807**

T.S. No.: **14-0936**    Loan No.: **\*\*\*\*\*\*\*900**    SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO
ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE
COPIES PROVIDED TO THE TRUSTOR]**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 11/30/2006 AND MORE
FULLY DESCRIBED BELOW.  UNLESS YOU TAKE ACTION TO PROTECT YOUR
PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check payable at the time of sale in lawful
money of the United States (payable to Attorney Lender Services, Inc.) will be held by the duly appointed
Trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the
hereinafter described property under and pursuant to a Deed of Trust described below.  The sale will be
made, but without covenant or warranty, expressed or implied, regarding title, possession, or
encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with
interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of
Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be
greater on the day of sale.

Trustor: **PETER MCCOY, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**
Trustee: **ATTORNEY LENDER SERVICES, INC.**
Recorded **8/31/2007** as Instrument No. **2007-0047126** of Official Records in the office of the Recorder of
**Santa Cruz** County, California,
Date of Sale: **6/8/2016** at **1:45 PM**
Place of Sale:    **At the courtyard steps to the Santa Cruz County Courthouse located at 701
Ocean Street, Santa Cruz, CA 95060**
Amount of unpaid balance and other charges: **$1,129,106.85**
The purported property address is:    **260 Baltusrol Drive,
Aptos, California 95003**

A.P.N.: **053-211-20**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county wherein the real property is located and more than three (3) months have elapsed since such recordation.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Trustee's Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER**: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **714-730-2727** for information regarding the trustee's sale or visit this Internet Web site **www.servicelinkasap.com** for information regarding the sale of this property, using the file number assigned to this case, **14-0936** Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

Date: 4/29/2016

**ATTORNEY LENDER SERVICES, INC.**

*Diane Weifenbach*

Diane Weifenbach, Trustee Sale Officer
5120 E. LaPalma Avenue, #209
Anaheim ,CA 92807
Telephone: 714-695-6637

Sales Line: 714-730-2727
Sales Website: www.servicelinkasap.com

This office is attempting to collect a debt and any information obtained will be used for that purpose.

# EXHIBIT "8"

# PAYMENT HISTORY

| PAYMENT HISTORY PER MSP | | | | | | | |
|---|---|---|---|---|---|---|---|

<table>
<tr><td colspan="3">LOAN NUMBER REDACTED</td><td colspan="5">POST-PETITION<br>PAYMENT CHANGES</td></tr>
<tr><td colspan="3">FILING DATE: 06-07-16</td><td colspan="5"></td></tr>
<tr><td colspan="3">PAYMENTS IN POC: 3/1/14 - 6/1/16</td><td>EFFECTIVE</td><td></td><td></td><td></td><td></td></tr>
<tr><td colspan="3">FIRST POST-PETITION DUE DATE: 7/1/16</td><td>AMOUNT</td><td></td><td></td><td></td><td></td></tr>
</table>

| | INCOMING FUNDS | | MANUAL HISTORY | | | | COMMENTS |
|---|---|---|---|---|---|---|---|
| **DATE** | **POST-PETITION TRAN AMT** | **POST FUNDS RECEIVED** | **PAYMENT AMOUNT** | **TO MANUAL SUSP** | **MANUAL SUSP BAL** | **MANUAL POST PYMT** | **COMMENTS** |
| STARTING BALANCES | | $ - | $ - | $ - | | | |
| | | $ - | | $ - | $ - | | No payments have been made since filing bankruptcy and no funds in suspense. |
| | | $ - | | $ - | $ - | | |